*926 OPINION OF THE COURT
F. Dana Winslow, J.
Plaintiff in this action seeks to recover his share of profits earned upon the sale of real property, in accordance with an alleged partnership agreement between himself and the defendant. By order dated October 1, 2003 (the prior order), this court denied defendant’s motion for leave to amend his answer, pursuant to CPLR 3025 (b), to allege a seventh affirmative defense of unclean hands based on illegality. The basis of this defense was that plaintiff allegedly made certain misrepresentations on a United States Department of Housing and Urban Development (HUD) form in connection with a mortgage application, in order to obtain financing in excess of the actual sales price. Defendant now moves to reargue and renew the prior order pursuant to CPLR 2221. Oral argument was held before the court on May 21, 2004, and the motion was adjourned to that date.
As a procedural matter, the court finds that the defendant is entitled to reargue the prior order, having timely filed this motion, upon appropriate grounds, pursuant to CPLR 2221 (d). Accordingly, the court need not belabor the question of renewal pursuant to CPLR 2221 (e) (2). The prior motion was denied, in part, because defendant made no evidentiary showing to establish the merit of the newly asserted defense. Defendant now submits handwritten notes, furnished by plaintiffs counsel after the submission of the prior motion, purportedly showing that the agreed upon purchase price was $205,000, which is $55,000 less than the purchase price listed on the HUD-1 settlement statement. Plaintiff argues that this is not a new fact, but rather, confirmation of a fact alleged in the amended complaint; namely, that the parties assigned a value to the property less than the purported purchase price of $260,000. The court does not find this issue clearly pleaded in the amended complaint. Moreover, leave to renew may be properly granted upon the submission of new evidence, unavailable on the prior motion, which establishes a fact previously alleged but not proved. (See Bulis v Di Lorenzo, 142 AD2d 707 [1988].) The new evidence submitted here appears to support defendant’s contention that a false statement was made on the HUD form, for which no evidence was offered on the prior motion. This constitutes an appropriate basis for renewal of the prior order.
Turning to the substantive issues, the court adheres to its determination, in the prior order, that the affirmative defense of *927 “unclean hands” is unavailable to defendant. However, upon re-argument, defendant contends that the court misapprehended the nature of the proposed defense. Noting the distinction between the defense of unclean hands and the defense of illegality, defense counsel states “that it was never the defendant’s intention to interpose the defense of unclean hands, and that this Court should grant the defendant’s motion to amend his answer to include the affirmative defense of illegality.” (Affirmation of Lee M. Albin, Esq., dated Oct. 30, 2003.) This statement is belied, in part, by the language of the proposed “Seventh Affirmative Defense,” which ascribes several legal theories to the alleged conduct, including unclean hands, illegality, fraud, and violation of public policy, and combines them in a single undifferentiated defense.
It is not the court’s job to parse out the sustainable and unsustainable portions of a proposed pleading. The court cannot grant leave to amend the answer in the form proposed. However, the court does not believe that this formal defect requires denial of the instant motion, given that the court could condition its relief on the correction or clarification of the pleading. (Cf. CPLR 3026.)
The essential question raised and argued by the parties is whether the defendant should be permitted to interpose the defense of illegality. It is well settled that “[mjotions for leave to amend pleadings are liberally granted in the absence of prejudice or surprise.” (Breco Envtl. Contrs. v Town of Smithtown, 307 AD2d 330, 332 [2003]; Hartford Cas. Ins. Co. v Vengroff Williams & Assoc., 306 AD2d 435, 436 [2003].) Even without a showing of prejudice, however, leave should be denied “where the proposed amendment is palpably insufficient as a matter of law or is totally devoid of merit.” (Id.)
In this case, plaintiff does not allege unfair prejudice or surprise. Thus, the court’s determination rests on the question of merit. Earlier cases have held that “the court should not examine the merits or legal sufficiency of the proposed amendment unless it is ‘clearly and patently insufficient on its face.’ ” (Hopper v Hise, 131 AD2d 814, 815 [1987].) More recently, however, courts appear to condone greater scrutiny of the merits, and to place the burden on the proponent to demonstrate a proper basis for the proposed amendment. The Second Department states that “it is incumbent upon the movant to make ‘some evidentiary showing that the claim can be supported’. In determining whether to grant leave, a court must ex *928 amine the underlying merit of the proposed claims, since to do otherwise would be wasteful of judicial resources.” (Morgan v Prospect Park Assoc. Holdings, 251 AD2d 306, 306 [1998] [citation omitted]; see also Frost v Monter, 202 AD2d 632 [1994].)
Defendant alleges that the parties knowingly made a false statement to the United States Department of Housing and Urban Development, in violation of 18 USC § 1010, by signing a HUD-1 settlement statement which overstated the purchase price. Plaintiff argues that “mere signatures” on the settlement statement do not establish a violation of the statute, and that defendant has, thus, failed to meet his evidentiary burden to demonstrate the merit of his illegality defense. (Plaintiffs mem of law at 5-6.) In defendant’s view, however, plaintiffs argument merely confirms the existence of issues of fact regarding his proposed defense, which requires that the motion be granted. (See Webar, Inc. v Capra, 212 AD2d 594 [1995].)
The court finds that, in this case, the availability of the illegality defense does not turn on issues of fact. The court may assume, for purposes of this motion, that the facts alleged by defendant in the proposed “Seventh Affirmative Defense” are true and that all the elements of the crime have been established. The court also assumes that a contract existed, of the nature and on the terms alleged by plaintiff, because the illegality defense would not come into play unless the plaintiffs claim were proved. The crux of the matter before the court is whether, as a matter of law, the illegality alleged by defendant constitutes a defense to the contract being sued upon.
As a general rule, illegal contracts are unenforceable. (Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124 [1992].) A party to an illegal contract cannot resort to a court of law for help in carrying out its illegal object. (Valenza v Emmelle Coutier, Inc., 288 AD2d 114 [2001]; Blum v Drucker, 240 AD2d 609 [1997].) However, this rule is not reflexively and universally applied, particularly where public policy is not served by its application, or overriding considerations of fairness require a different result.
The general rule may not apply where the illegality in question is not malum in se, but is merely malum prohibitum, on the basis of a statutory violation. (Lloyd Capital Corp. v Pat Henchar, Inc., supra at 127.) In such circumstances, unless the statute expressly provides that its violation will deprive the parties of their right to sue on the contract, the court will not impose such penalty where it is “wholly out of proportion to the *929 requirements of public policy.” (Id. [internal quotation marks omitted].) The court therefore will consider the kind of harm which the statute seeks to prevent, and whether or not there are regulatory sanctions or statutory penalties in place to redress the violation. The court will also consider the effect of voiding or rescinding the contract. The illegality defense is rejected where it would result in a forfeiture to one party, and an undeserved windfall to the other. “[Forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as a ‘sword for personal gain rather than a shield for the public good’ ” (id. at 128, quoting Charlebois v Weller Assoc., 72 NY2d 587, 595 [1988]). In such cases, the contract will be enforced to the extent that the court can do so without compelling the precise conduct made unlawful by the statute. (Id.)
Similarly, courts will not automatically void a contract that is legal on its face, but which calls for unlawful conduct in its performance or as part of a side agreement, which would be collateral to the contract to be enforced. (See X.L.O. Concrete Corp. v Rivergate Corp., 83 NY2d 513 [1994]; Murray Walter, Inc. v Sarkisian Bros., 107 AD2d 173 [1985].) In this context, the critical question is whether enforcement of the contract would result in compelling the performance of illegal conduct. If the illegal conduct is so integrally related to the contract that the contract could not be enforced without promoting illegality, then the defense will be upheld. “Beyond that point, however, ‘courts are to be guided by the overriding general policy ... of preventing people from getting other people’s property for nothing when they purport to be buying it’.” (X.L.O. Concrete Corp. v Rivergate Corp., 83 NY2d at 517 [citations omitted]; Murray Walter, Inc. v Sarkisian Bros., 107 AD2d at 178.) As above, the illegality defense is disfavored where it would work a substantial forfeiture on one party, while allowing the other party, who has already reaped the benefit of the transaction, to avoid the corresponding obligation. (Id.) This is particularly true where the two parties are equally culpable with respect to the illegal conduct.
Applying these principles to the case at bar, this court concludes that the illegality defense should be rejected. First, the court notes that the statute allegedly violated, 18 USC § 1010, does not provide that its violation renders a contract unenforceable. Thus, the court is free to consider whether the loss of judicial recourse is, or is not, out of proportion to the *930 requirements of public policy or appropriate individual punishment. (See Wowaka & Sons v Pardell, 242 AD2d 1 [1998].)
Public policy requires that the court refrain from enforcing or commanding the performance of illegal conduct. Here, the contract, as alleged by plaintiff, is not illegal on its face. It is an agreement to purchase, maintain and resell real property on behalf of a partnership. The alleged illegality, making a false statement on a loan document for purposes of obtaining loan proceeds in excess of the purchase price, was collateral to the contract which plaintiff seeks to enforce. Although the illegal conduct may have been contemplated as part of the purchase transaction, and may have been a motivating factor for at least one of the parties to enter into the agreement, it is not related to the provision which plaintiff seeks to enforce; namely, the equal distribution of resale profits. To enforce this portion of the contract (the only portion which remains executory) would not compel illegal conduct.
Denying enforcement of the contract would do nothing to serve the public interest underlying 18 USC § 1010 of preventing fraud in connection with loans insured by the federal government. The statute itself provides a direct and adequate mechanism for redressing (and deterring) violations. It imposes criminal penalties including fines, imprisonment, or both.
Rather than serving the interests of justice, denying enforcement would yield the unjust result of punishing one wrongdoer and rewarding the other for the same joint act. Having fully performed his obligations under the contract (assuming this can be proven), plaintiff would be deprived of his bargained-for benefit — his one-half share of the resale profit. The fact of full performance
“critically affects whether enforcement of another party’s contractual obligation will be refused on the ground of illegality. ‘While the bargain is wholly ex-ecutory, there is" no serious injustice in denying enforcement to either party. After either party has performed substantially, the denial of all remedy would disproportionately penalize him . . .’ ” (Murray Walter, Inc. v Sarkisian Bros., 107 AD2d at 177, quoting 6A Corbin, Contracts § 1521).
Defendant, on the other hand, would derive a windfall. He would be allowed to retain the entire resale profit, to which he is not entitled under the contract. The relief from this contractual burden would reflect a legal climate in which crime does, in fact, pay.
*931 Defendant argues that this case is distinguishable from the cases discussed above because the statutory violation in question is not merely malum prohibitum, but constitutes a felony. Without minimizing the wrong committed by both parties, the court notes that no injury, to the lender or the federal government, resulted from the false application, because the loan was paid in full. Arguably, this may “mitigat[e] the moral turpitude” of the crime. (Murray Walter, Inc. v Sarkisian Bros., supra at 177.) More to the point, however, the seriousness of the crime is only one factor the courts consider in determining the availability of the illegality defense. The commission of a felony does not inexorably result in the forfeiture of contractual rights. (See, e.g., Murray Walter, Inc. v Sarkisian Bros., supra [rejecting illegality defense based on false reporting of the transaction to the Internal Revenue Service].) The inquiry is not confined to the degree of criminality, but rather, must consider the dictates of public policy and individual justice in the context of the contractual relief sought.
In this case, the court concludes that the denial of a contractual remedy is not compelled by public policy and contravenes the interest in individual justice. Therefore, as a matter of law, the defense of illegality is devoid of merit, and will not be added by amendment to the answer.
The court has considered the parties’ remaining contentions and finds them to be without merit.
Based upon the foregoing, it is ordered that defendant’s motion to reargue and renew is granted, and upon reargument and renewal, defendant’s motion to amend his answer to add the defense of illegality is denied.